UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER W. NEAL,

                                 Plaintiff,            DECISION AND ORDER
      -v-                                                 and ORDER TO SHOW
                                                          CAUSE PURSUANT TO
S.E. BYRNE, Correction Lieutenant, et al.,        LOCAL RULE 41.2

                               Defendants.         06-CV-6250 CJS
_____

This is an action pursuant to 42 U.S.C. § 1983, in which Plaintiff, formerly a prison inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that Defendants, all employees of DOCS, violated his federal constitutional rights. Now before the Court is Defendants' unopposed motion for partial summary judgment [#29]. For the reasons that follow, the application is granted in part and denied in part. Additionally, Plaintiff is directed to show cause why his remaining claims should not be dismissed for failure to prosecute.

## BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case, viewed in the light most-favorable to Plaintiff, the non-moving party. At all relevant times, Plaintiff was housed at Five Points Correctional Facility ("Five Points"). During the relevant period, Defendant Thomas Poole ("Poole") was the Superintendent at Five Points, Defendant Lawrence Weingartner ("Weingartner") was the Deputy Superintendent, Defendant S.E. Byrne ("Byrne") and Defendant Henry ("Henry") were Corrections Officers, and Defendant Omar Abdel-Rassaq ("Omar") was the Muslim Imam or Chaplain. At all relevant times, Defendant Glenn Goord ("Goord") was the DOCS Commissioner, and Defendant Kenneth

McLaughlin ("McLaughlin") was employed by the Office of the New York State Inspector General.

On June 22, 2005, Plaintiff was assigned to a new cell at Five Points, in which there was no mattress. Plaintiff complained about the missing mattress to several corrections officers, including Defendant Henry. Plaintiff received a mattress the next day.

On July 4, 2005, Plaintiff filed an inmate grievance, stating that he was a Muslim, and that he did not want to be double-bunked with his non-Muslim cell-mate, since the man had photographs of family members displayed, which prevented Plaintiff from praying. The Inmate Grievance Review Committee ("IGRC") denied the appeal, and Poole affirmed the IGRC's decision.

Sometime prior to July 2005, Plaintiff successfully settled a lawsuit in which Byrne was a defendant. On July 28, 2005, Byrne wrote a misbehavior report against Plaintiff, charging him with harassment. Plaintiff was subsequently found guilty of the charge and sentenced to twenty-five days in Keeplock, with loss of privileges. As discussed further below, Plaintiff wrote a letter to the Office of the New York State Inspector General, complaining about Byrne's alleged retaliation. Although the details are not clear from the record, the Inspector General's office initiated some type of investigation. However, Plaintiff was not satisfied with the result. Poole also investigated and found no evidence to substantiate the allegation. (*See*, Letter of Lucien J. Leclaire, Jr. Deputy DOCS Commissioner, dated August 23, 2005).

On August 8, 2005, Plaintiff filed a grievance, complaining that he was not being allowed to purchase Muslim oil from a particular mail-order supplier. The IGRC denied the grievance, finding that Plaintiff was required, by DOCS Directive 4911, to obtain such oil from

the facility Imam. In that regard, Five Points's Policies and Procedures, Policy Number 23.1, states, in relevant part: "The facility Imam will provide access to religious oils through a community fund raiser. As per DOCS Directive #4911, Section IV, Paragraph K, the Superintendent has approved the facility Imam as the only approved source for Islamic oils." (Defendant's Rule 26 Disclosures, Exhibit B). Poole affirmed the IGRC's ruling.

On November 8, 2005, Imam Omar sent a memo to Weingartner, advising him that he was suspending Plaintiff, along with four other inmates, from Muslim community call-outs, "due to their misbehavior and continuance [sic] disturbance of the Muslim community programs and activities." On November 10, 2005, Plaintiff filed an inmate grievance, complaining that Omar had "unjustly" removed Plaintiff's name from the call-out list for Islamic classes and "Friday Jummah Services." As part of the grievance, Plaintiff also asked that he be provided with "fasting food for 6 days of Shawwal." Plaintiff did not indicate that he had previously requested or been denied such food. The IGRC denied the grievance, and Poole affirmed the decision, stating: "Imam Omar removed you from the call out based on a disturbance you caused within the Muslim community. You were advised to write to the Imam and resolve the issue. Appeal denied."

On May 23, 2006, Plaintiff, proceeding *pro se*, commenced this action. On March 8, 2007, Plaintiff filed an Amended Complaint, Docket No. [#6] ("the Complaint"). The Complaint purports to state the following claims: 1) a claim that Henry deprived Plaintiff of a mattress on one occasion; 2) a claim that Byrne retaliated against Plaintiff by filing a false misbehavior report against him; 3) a claim that Omar violated Plaintiff's rights to religious freedom and due process, by removing him from the Muslim call-out list, resulting in Plaintiff missing Friday Jummah prayer services and religious instruction over a period of three

3

weeks, and by denying him religious meals; 4) a claim that Weingartner permitted Omar to violate Plaintiff's rights of religious freedom and due process; 5) a claim that Poole permitted Byrne to retaliate against him, and permitted Omar and Weingartner to violate his rights to religious freedom and due process, and that Poole further violated Plaintiff's religious rights by allowing him to be double-bunked with a non-Muslim cell mate and by preventing him from receiving Muslim oils through the mail; 6) a claim that Goord failed to prevent retaliation by Byrne, and permitted violations of Plaintiff's religious rights; and 7) a claim that McLaughlin failed to properly investigate Plaintiff's retaliation complaint against Byrne.

On June 25, 2008, Omar filed his sworn responses to Plaintiff's Request for Deposition Upon Written Questions. (Docket No. [#27]). Omar stated in relevant part: "On November 8, 2005, C. Neal was suspended from Muslim community call outs due to misbehavior and disturbance of the Muslim community programs and activities. . . . Directive 4202 sets out the procedure for managing religious services. The inmates and plaintiff were not suspended from practicing their religious faith only from call outs to participate in religious services."

On November 25, 2008, Defendants filed the subject motion for summary judgment. Defendants contend that they are entitled to judgment for the following reasons: 1) Plaintiff lacks standing to challenge his removal from Muslim services, since such removal "was due to Plaintiff's own misbehavior and disturbances"; 2) Plaintiff's First Amendment religious freedom claims must be dismissed, since Plaintiff did not have a sincerely-held belief in the Muslim faith, since Defendants did not substantially burden Plaintiff's beliefs, and since Defendants acted reasonably; 3) the claims against Goord, Poole, and McLaughlin must be dismissed for lack of personal involvement; 4) Defendants are entitled to qualified immunity

4

on the claim involving double-bunking with non-Muslim cell mates; and 5) Plaintiff cannot recover compensatory damages, since he suffered no physical injury. Defendants also contend that the claim against C.O. Henry must be dismissed, pursuant to FRCP 4(m), for failure to effect service. Along with their motion, Defendants served Plaintiff with an *Irby* notice, advising him, *inter alia*, that his claims could be dismissed unless he responded with "sworn affidavits or other papers as required by Rule 56(e)." (Docket No. [#32]).

On February 5, 2009, the Court issued a Motion Scheduling Order [#34], directing Plaintiff to file and serve any response to the summary judgment motion on or before March 6, 2009. On February 9, 2009, the Court issued a Decision and Order [#35], denying Plaintiff's motion for appointment of counsel, and reiterating that he had to "comply with the scheduling deadlines set forth in the Motion Scheduling Order (Docket No. [#34]) filed on February 5, 2009." On May 18, 2009, the Court issued an Amended Motion Scheduling Order [#36], noting that Plaintiff had failed to file any responsive papers, and cancelling oral argument. To date, the Court has received no response from Plaintiff.

DISCUSSION

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a]

5

(Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e).  Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> \*\*\*
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

<u>*Retaliation Claim Against Byrne*</u>

At the outset, the Court notes that Byrne has not moved for summary judgment on the retaliation claim, except to seek partial summary judgment as to compensatory damages. The Court will discuss the compensatory damages issue below.

<u>*Henry Was Never Served*</u>

On May 18, 2008, the Honorable Jonathan W. Feldman, United States Magistrate Judge, issued a Decision and Order [#25] in this action, which noted, in relevant part, that "[a] review of the Docket in this action reveals that defendant C.O. Henry has not been served, [and] that plaintiff has neither requested assistance with service or otherwise

7

pursued his claim against C.O. Henry." Judge Feldman extended the deadline for service by one hundred twenty days, to give Plaintiff a "final opportunity" to either serve Henry or request the Court's assistance in doing so. In response, Plaintiff did nothing. Consequently, Plaintiff has failed to make timely service on Henry, and the claim against Henry is dismissed without prejudice, pursuant to FRCP 4(m). The Court notes, though, that even if Plaintiff had served Henry, the bare allegation that Henry failed to provide Plaintiff with a mattress on one occasion fails to state a constitutional claim.

*First Amendment Claims*

The legal principles applicable to prisoners' claims under the First Amendment's Free Exercise Clause are well-settled:

> [A]lthough prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Accordingly, . . . a challenged prison regulation is judged under a 'reasonableness' test less restrictive than that ordinarily applied: a regulation that burdens a protected right passes constitutional muster 'if it is reasonably related to legitimate penological interests.
>
> Courts must evaluate four factors in making the reasonableness determination: [1] whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; [2] whether prisoners have alternative means of exercising the burdened right; [3] the impact on guards, inmates, and prison resources of accommodating the right; and [4] the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests. The first . . . "factor" is more properly labeled an "element" because it is not simply a consideration to be weighed but rather an essential requirement.
>
> The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs. The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational.

8

*Salahuddin v. Goord*, 467 F.3d 263, 274-275 (2d Cir. 2006) (citations and internal quotation marks omitted). To summarize, the plaintiff has the threshold burden of establishing that the complained-of action substantially burdened his sincerely-held religious belief, and if that burden is met, the burden shifts to the defendant to identify a legitimate penological interest for the action. Once defendant does that, the court must consider whether the action is reasonable, using the test described above.

Here, Defendants maintain that Plaintiff cannot meet his threshold burden, because he does not have a sincerely-held belief in the Muslim faith, as shown by his disruptive behavior during religious services, and because Defendants did not substantially burden his religious beliefs. Defendants further contend that, even if Plaintiff can meet his initial burden, their actions were reasonably related to legitimate penological interests, namely, "the legitimate governmental interest of preserving order within the prison system." (Defendants' Memo of Law [#33] at 6). As a separate grounds for dismissal, Defendants contend that Plaintiff lacks standing to challenge his exclusion from Muslim services, since it was caused by his own misbehavior. In that regard, Defendants cite *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091 (2d Cir. 1997).

Even assuming, *arguendo*, that Plaintiff has standing and that his religious beliefs are sincerely held, the Court agrees that he has not shown that Defendants substantially burdened those beliefs. In that regard, Plaintiff contends only that he missed three Jummah prayer services and Islamic study classes, that he could not purchase Muslim oils through the mail, and that he had to share a cell with a non-Muslim.[1] Plaintiff was not prevented from

---

[1] Plaintiff also complains that he was denied "fasting food" during Shawwal. However, there is no indication that Plaintiff made a request for such food to any Defendant in this action. In that regard, Plaintiff inserted his request for such food, apparently as an afterthought, into an inmate grievance in which he was

9

praying by himself or obtaining oils from the Imam, nor was he otherwise prevented from observing his Muslim faith. The Court finds that these incidents of which Plaintiff complains do not amount to a substantial burden.

Additionally, the Court finds, after considering the factors set forth above, that, even if these incidents amounted to a substantial burden, that Defendants acted reasonably. In that regard, Defendants maintain that Plaintiff was removed from the Muslim call-out list because of disruptive behavior, and Plaintiff has not produced any evidentiary proof, in admissible form, to dispute that claim. Furthermore, it was not unreasonable to require Muslim inmates to obtain oil from the facility Imam, or to house them in the same cell with inmates of different faiths. Therefore, Defendants' motion for summary judgment on the First Amendment religious freedom claims is granted.

### *Personal Involvement By Goord, Poole, and McLaughlin*

As discussed above, a defendant cannot be held liable under Section 1983 unless he was personally involved in the alleged constitutional violation. The Complaint contains conclusory allegations that Poole "refused to address" the double-bunking issue, allowed Omar and Weingartner to violate Plaintiff's rights, prevented Plaintiff from receiving Muslim oils, and allow[ed] bias[ed] investigations." As for the alleged biased investigations, the Court construes the complaint to allege that Poole ignored the alleged retaliation by Byrne. The Complaint also contains conclusory allegations that Goord "refused to move" Plaintiff away from Byrne, and permitted violations of Plaintiff's religious freedom. The Complaint

---

complaining about his removal from the Muslim call-out list for prayer services and classes. There is no indication that it was necessary for him to be on the call-out list to receive the fasting food, and there is no indication that he requested such meals through the proper channels. As to that, the Court finds that making such a request as part of a grievance, where there is no indication that such a request had previously been denied, was not the proper channel.

10

further alleges that McLaughlin failed to order an investigation, after being "notified" of Byrne's alleged retaliation.

With regard to Goord, the record indicates that, although Plaintiff wrote letters to Goord, concerning the double-bunking and alleged retaliation by Byrne, Goord referred the letters to other staff members, who investigated and responded to Plaintiff. (Defendants' Rule 26 Disclosures, Exhibit A). Additionally, Plaintiff's letter regarding double-bunking did not mention religious issues, but merely complained about double-bunking generally. (*See*, Letter to Goord, dated received December 8, 2006, complaining about cell mates who are dirty, don't like to clean, or homosexual).

With regard to McLaughlin, the record indicates that on July 28, 2005, Plaintiff wrote a letter to the Office of the Inspector General, requesting some type of investigation. Apparently, the letter involved alleged retaliation by Byrne, since July 28, 2005 is the same date that Byrne issued Plaintiff the misbehavior report. Plaintiff apparently received some type of response from the Inspector General's office on August 1, 2005. On or about August 17, 2005, Plaintiff wrote to McLaughlin, complaining that whatever investigation was being conducted was "frivolous." There is no indication that McLaughlin responded to the letter.

As for Poole, the record indicates that Plaintiff wrote a grievance concerning double-bunking with non-Muslims, and that Poole affirmed the denial of the grievance, finding that "there is no statewide mandate to house same race or same ethnicity inmates together." (Defendant's Rule 26 Disclosures, Exhibit B). Plaintiff also filed a grievance, complaining that he was not being permitted to purchase Muslim oils through the mail, and Poole affirmed the denial of that grievance. In that regard, Poole noted that DOCS Directive 4911 permitted Plaintiff to obtain such oils, but that Plaintiff had to obtain the oil from the facility Imam, not

11

through the mail. Further, Plaintiff filed a grievance concerning his removal from the Muslim call-out list, and Poole affirmed the denial of the grievance, noting: "Imam Omar removed you from the call out based on a disturbance you caused within the Muslim community. You were advised to write to the Imam to resolve the issue." Finally, Plaintiff complained to Poole regarding retaliation by Byrne, and Poole found no evidence to substantiate the claim.

The Court has already found that Defendants are entitled to summary judgment on the merits of religious freedom claims. Additionally, the Court finds that Goord and McLaughlin are entitled to summary judgment on the remaining retaliation claim, since there is no indication that they were personally involved. Plaintiff has not come forward with evidentiary proof in admissible form, showing that Goord or McLaughlin was actually aware of the alleged retaliation.

As for Poole, the record indicates that Plaintiff wrote a letter to the DOCS Commissioner complaining of retaliation by Byrne, that the Commissioner's office referred the letter to Poole, and that Poole investigated and found no evidence to substantiate Plaintiff's allegation. (Defendants' Rule 26 Disclosure, Exhibit A, Letter of Lucien J. Leclaire, Jr., dated August 23, 2005). The record does not contain Plaintiff's complaint letter, Poole's response, or an affidavit from Poole, and Defendants' counsel makes only a cursory and conclusory argument. (Defendants' Memo of Law at 7). Consequently, the Court finds that there are triable issues of fact concerning Poole's personal involvement in the alleged retaliation by Byrne.

*Compensatory Damages*

Defendants further maintain that Plaintiff cannot recover compensatory damages, since he did not suffer any physical injury. 42 U.S.C. § 1997e(e) provides that, "[n]o Federal

civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Plaintiff has not shown that he suffered any physical injury in connection with the claims in this action. Accordingly, Defendants are granted summary judgment as to compensatory damages.

CONCLUSION

The claim against C.O. Henry is dismissed without prejudice. Defendants' motion for partial summary judgment [#38] is granted in part and denied in part. In that regard, Defendants are granted summary judgment as to all claims, except the retaliation claim against Byrne and Poole. The Clerk of the Court is directed to enter judgment for Goord, Omar, McLaughlin, and Weingartner. Byrne and Poole are granted summary judgment as to compensatory damages, and Plaintiff's demand for such damages is dismissed.

Based upon Plaintiff's failure to contest the summary judgment motion, as well as the fact that the Court has heard nothing from Plaintiff since April 2008, it is unclear whether Plaintiff has abandoned this action. Accordingly, Plaintiff is Ordered to Show Cause, pursuant to Local Rule of Civil Procedure 41.2, in writing on or before **October 23, 2009**, why this action should not be dismissed for failure to prosecute. If Plaintiff fails to comply with this direction, the Court will dismiss this action.

Dated:   October 7, 2009
         Rochester, New York

                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge